UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MELLODY LaVALLEY,

    Plaintiff,

  v.                                            Case No. 20-CV-1432-SCD

KILOLO KIJAKAZI,
**Acting Commissioner of Social Security,**

    **Defendant.**

## DECISION AND ORDER

Mellody LaValley applied for social security disability benefits based on lower back and hip pain, diabetic neuropathy, and several psychiatric conditions. After a hearing, an administrative law judge denied LaValley's claim, finding that although she had severe impairments, she was still capable of performing sedentary work with certain physical and mental limitations. LaValley filed a new application and was awarded benefits. She now seeks judicial review of the unfavorable decision, arguing that the ALJ erred in evaluating her diabetes, ignoring the medical opinion of her psychologist, and overstating her mental abilities. She also argues that new evidence (including the favorable disability finding), unheard by the ALJ, requires remand for a new hearing. Because LaValley has failed to demonstrate that the ALJ would have reached a different conclusion had her "new" evidence been considered, she is not entitled to remand on that basis. However, I agree that the ALJ committed reversible error in assessing LaValley's mental residual functional capacity—that is, the most she could do despite her limitations. Accordingly, I will reverse the decision denying LaValley disability benefits and remand the matter for further proceedings.

# BACKGROUND

In September 2016, LaValley applied for supplemental security income, alleging that she became disabled on March 30, 2006. R. 12, 242–46.[1] LaValley asserted that she suffered from a number of medical conditions that limited her ability to work, including: a back injury, arthritis/degenerative disc disease, diabetes, post-traumatic stress disorder, depression, anxiety, post-traumatic head injury, borderline personality disorder, blastomycosis, and diabetic neuropathy. R. 265. She alleged that she could walk or stand for only short periods of time, she fell occasionally, she had weakness in her arms and legs, she had hip and back issues, she was in constant pain, she had medication and physical limitations, and she was not always able to drive or go places without assistance. R. 294.

The Social Security Commissioner denied LaValley's application initially and upon reconsideration. *See* R. 126–66. Esther Lefevre, PhD, the state-agency psychological consultant who reviewed the record at the initial level of review, opined that LaValley's mental-health impairments were not presumptively disabling because she did not have an extreme limitation of one, or a marked limitation of two, of the four areas of mental functioning a person uses in a work setting (known in social security lexicon as the "paragraph B" criteria): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. R. 132–35. On the mental RFC form, Dr. Lefevre indicated that LaValley had moderate limitations with sustained concentration and persistence, moderate social interaction limitations, and moderate adaptation limitations. R. 139–41. Aracelis Rivera, PsyD, reviewed the record for the state agency upon LaValley's request for reconsideration. Dr. Rivera agreed with Dr.

---

[1] The transcript is filed on the docket at ECF No. 19-1 to ECF No. 19-7.

Lefevre's opinion that LaValley's mental impairments were not presumptively disabling, though her evaluation of the paragraph B criteria differed slightly. *See* R. 154–56. Dr. Rivera also agreed that LaValley had moderate limitations with sustained concentration and persistence, social interaction, and adaptation. *See* R. 161–63. After the Commissioner denied her application at the state-agency level, LaValley requested an administrative hearing before an ALJ. R. 179.

On November 13, 2018, ALJ William Shenkenberg held an evidentiary hearing on LaValley's disability application. *See* R. 36–69. At the hearing, LaValley's representative amended her alleged onset date to correspond to the filing date, September 19, 2016. R. 12, 41, 263. LaValley testified at the hearing. *See* R. 43–63. She indicated that her most disabling physical condition was her lower back and right hip pain. R. 46. LaValley stated that she also suffered from migraine headaches and several psychiatric conditions. *See* R. 52–54, 56–57.

The ALJ also heard testimony from a vocational expert. *See* R. 63–68. The vocational expert testified that a hypothetical person with LaValley's age (thirty-eight years old at the time of her application), education (a high school equivalency degree and a few post-graduate degrees), and work experience (as a cab driver, a security guard, and a criminal investigator) could not perform her past relevant jobs if she were limited to a restricted range of sedentary work. R. 64–66. That person could, however, work as a lamp shade assembler, a stuffer machine tender[2], or a surveillance system monitor. R. 66–67. The vocational expert testified that no jobs would be available if the hypothetical person was off task at least fifteen percent of the workday or missed at least two days of work per month. R. 67–68. LaValley's representative did not pose any questions to the vocational expert. *See* R. 68.

---

[2] The VE was somewhat vague about the nature of this position.

On March 27, 2019, the ALJ issued a written decision finding that LaValley was not disabled. *See* R. 9–29. The ALJ applied the standard five-step analysis. *See* 20 C.F.R. § 416.920(a)(4). At step one, the ALJ determined that LaValley had not engaged in substantial gainful activity since September 19, 2016, the date she filed her application. R. 14. The ALJ determined at step two that LaValley had eleven severe[3] impairments: history of right hip fracture, lumbar degenerative disc disease, left shoulder degenerative joint disease, diabetes mellitus, neuropathy, migraines, obesity, depression, anxiety, post-traumatic stress disorder, and a personality disorder. R. 14–15. At step three, the ALJ determined that LaValley did not have an impairment, or a combination of impairments, that meets or medically equals the severity of a presumptively disabling impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 15–17. With respect to mental impairments, the ALJ found that LaValley had a mild limitation in her ability to understand, remember, or apply information; a moderate limitation in her ability to interact with others; a moderate limitation in her ability to concentrate, persist, or maintain pace; and a moderate limitation in her ability to adapt or manage herself. R. 16.

The ALJ next assessed LaValley's RFC. The ALJ found that LaValley had the RFC to perform sedentary work with several additional limitations. R. 17. Specifically, the ALJ determined that LaValley can never climb ladders, ropes, or scaffolds; can only occasionally stoop, kneel, crouch, and crawl; is limited to occasional overhead reaching bilaterally; and must avoid all exposure to hazards such as moving machinery and unprotected heights. *Id.* As for mental restrictions, the ALJ determined that LaValley is able to understand, remember,

---

[3] An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c).

and carry out simple instructions and perform simple routine tasks; is limited to low-stress jobs (defined as having only occasional workplace changes); and is limited to occasional interaction with co-workers, supervisors, and the public. *Id.* In assessing that RFC, the ALJ considered LaValley's subjective allegations, the medical evidence, and the medical opinion evidence and prior administrative findings. *See* R. 17–22.

The ALJ discussed medical evidence showing a history of hip, shoulder, and neck pain; diabetes; migraine headaches; obesity; and mental impairments. *See* R. 18–19. With respect to LaValley's headache impairment, the ALJ noted that LaValley reported a history of headaches dating to at least May 2014. R. 19 (citing Exhibit C19F/13 [R. 1369]). The ALJ noted that medical providers prescribed medication, but LaValley continued to experience headaches, including one in December 2016 that lasted twelve days. R. 19 (citing Exhibits C19F/13, C8F/1 [R. 807], C20F/6 [R. 1390], C16F/52 [R. 1336], C31F/1 [R. 1773]). The ALJ further noted, however, a brain MRI in August 2014 "revealed no evidence of edema, midline shift, or recent ischemic changes," R. 19 (citing Exhibit C19F/4 [R. 1360]), and a CT scan in March 2018 "revealed only mild diffuse brain volume loss without definite acute abnormality," R. 19 (citing Exhibit C23F/5 [R. 1450]). Also, the ALJ noted that physicians reported that LaValley's headache symptoms were improving in May 2017, R. 19 (citing Exhibit C16F/23), and the following month providers characterized her symptoms as "mild," R. 19 (citing Exhibit C16F/12 [R. 1296]).

As for the opinion evidence, the ALJ assigned significant weight to the opinions of Dr. Lefevre and Dr. Rivera, the reviewing state-agency psychological consultants. R. 21. The ALJ noted that both consultants opined that LaValley had "moderate limitations related to processing detailed instructions, maintaining extended attention and concentration, working

5

in coordination with others, completing a normal workday, interacting appropriately with coworkers and supervisors, and responding appropriately to changes in work setting." *Id.* (citing Exhibits C5A [R. 127–44], C7A [R. 146–66]). According to the ALJ, those opinions were "well supported by the claimant's treatment history, including bouts of exacerbated psychological symptoms but also intact mental findings repeatedly noted by treating physicians." R. 21.

Continuing the sequential evaluation process, the ALJ determined at step four that LaValley was not able to perform any past relevant work. R. 22. At step five, the ALJ determined that, considering LaValley's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that LaValley could perform. R. 22–23. Relying on the testimony of the vocational expert, the ALJ mentioned three examples: lamp shade assembler, stuffer machine tender, and surveillance system monitor. *Id.* Based on those findings, the ALJ determined that LaValley had not been under a disability from the date she filed his application through the date of the decision. R. 23.

The Social Security Administration's Appeals Council denied LaValley's request for review, R. 30–32, making the ALJ's decision a final decision of the Commissioner of the Social Security Administration, *see Loveless v. Colvin*, 810 F.3d 502, 506 (7th Cir. 2016).

After the Appeals Council denied review, LaValley filed a new application for supplemental security income. *See* ECF No. 25-1. In support of that application, LaValley "submitted the entire record from the denied claim." *Id.* ¶ 3. LaValley also submitted a medical opinion from one of her doctors, John Sladky, M.D. *Id.* ¶ 5. At the request of LaValley's attorney, Dr. Sladky filled out a headaches medical source statement on July 23, 2020. *See* ECF No. 25-1 at 19–28. Dr. Sladky indicated that LaValley suffered from one or

6

Case 1:20-cv-01432-SCD   Filed 11/08/21   Page 6 of 15   Document 34

two headaches per week, each lasting two to twelve hours. *Id.* at 24. He opined that LaValley would need to take unscheduled breaks throughout the workday, would be off task at least twenty-five percent of the workday, and would miss about four days of work each month due to her impairments or treatment for her impairments. *Id.* at 27–28. The Commissioner granted LaValley's new application, awarding her disability benefits as of April 2020. ECF No. 25-1 ¶ 4; ECF No. 25-1 at 2–16.

On September 14, 2020, LaValley filed this action seeking judicial review of the Commissioner's final decision denying her claim for social security disability benefits under the Social Security Act, 42 U.S.C. § 405(g). *See* ECF No. 1. The matter was reassigned to me after all parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). *See* ECF Nos. 4, 6, 7. It is now fully briefed and ready for disposition. *See* ECF Nos. 25, 32, 33.[4]

## DISCUSSION

Section 205(g) of the Social Security Act provides district courts with two possible methods for remanding a matter to the Commissioner. *See Shala v. Schaefer*, 509 U.S. 292, 296 (1993) (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 99–100 (1991)). "Under sentence four, a district court may remand in conjunction with a judgment affirming, modifying, or reversing the [Commissioner's] decision." *Melkonyan*, 501 U.S. at 99–100. "Under sentence six, the district court may remand in light of additional evidence without making any substantive ruling as to the correctness of the [Commissioner's] decision, but only if the claimant shows

---

[4] All subsequent citations to the parties' briefs are to the pages in the original document, not the page numbers provided by CM/ECF.

good cause for failing to present the evidence earlier." *Id.* at 100. LaValley seeks remand under both sentence six and sentence four of § 405(g).

I.  **Sentence-Six Remand**

Pursuant to sentence six of § 405(g), "[a] reviewing court may order additional evidence to be taken before the Commissioner upon a showing that there exists 'new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.'" *Schmidt v. Barnhart*, 395 F.3d 737, 741–42 (7th Cir. 2005) (quoting 42 U.S.C. § 405(g)). "Evidence is 'new' if it was 'not in existence or available to the claimant at the time of the administrative proceeding.'" *Schmidt*, 395 F.3d at 742 (quoting *Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997)). "New evidence is 'material' if there is a 'reasonable probability' that the ALJ would have reached a different conclusion had the evidence been considered." *Schmidt*, 395 F.3d at 742 (quoting *Johnson v. Apfel*, 191 F.3d 770, 776 (7th Cir. 1999)). "Thus, new evidence is material only if it is relevant to the claimant's condition 'during the relevant time period encompassed by the disability application under review.'" *Schmidt*, 395 F.3d at 742 (quoting *Kapusta v. Sullivan*, 900 F.2d 94, 97 (7th Cir. 1990)).

LaValley points to two pieces of "new" evidence that she argues deserve review by the Commissioner. First, Dr. Sladky's headaches medical source statement in which he opined that LaValley would need to take unscheduled breaks during the workday, would be off task at least twenty-five percent of the workday, and would miss about four days of work per month due to her migraine headaches. Second, the Commissioner's decision to award LaValley disability benefits as of April 2020 based on a new application she filed after the Appeals Council denied review on this claim. The Commissioner argues that LaValley has not met her burden of showing that remand is required under sentence six. I agree.

8

Let's start with the medical opinion of Dr. Sladky. He completed the medical source statement in July 2020—that is, over a year after the ALJ issued his decision here and nearly six months after the Appeals Council denied LaValley's request for review. Thus, the statement is new because it was not in existence or available to LaValley during the administrative proceedings. LaValley also has demonstrated good cause for not incorporating this evidence earlier, as she apparently did not begin treatment with Dr. Sladky until after the ALJ issued his decision.

Nevertheless, I am not convinced that there is a reasonable probability that the ALJ would have reached a different conclusion had he been able to consider Dr. Sladky's medical source statement. For one, there is no evidence that Dr. Sladky based his opinion on new or worsening symptoms. Dr. Sladky did not support his opinion with any treatment notes, test results, or other evidence. *See* 20 C.F.R. § 416.927(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion."). Rather, he simply asserted that his opinions were based on LaValley's chronic migraines, which began after a car accident in 2013. However, it's unclear when LaValley began seeing Dr. Sladky or how many times he treated her prior to filling out the statement. *See* 20 C.F.R. § 416.927(c)(2)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion."). Also, at the administrative hearing LaValley claimed that her migraines were *more frequent* (three vs. one or two times a week) and *more severe* (six hours to twelve days vs. two to twelve hours) than Dr. Sladky did in his medical source statement. *See* 20 C.F.R. § 416.927(c)(4) ("Generally, the

more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.").

Moreover, the ALJ thoroughly considered LaValley's headache impairment in his decision. The ALJ found that LaValley's migraines, while severe, did not satisfy the criteria of any presumptively disabling impairment. *See* R. 14–15. The ALJ also considered how LaValley's migraines limited her ability to work when assessing her RFC. *See* R. 17–22. The ALJ noted LaValley's ongoing complaints of headaches dating back to at least 2014. He also noted that LaValley sought treatment for severe headaches and was prescribed medication for them. But the ALJ cited other evidence showing normal imaging of LaValley's brain, LaValley claiming improvement in headache symptoms in 2017, and providers characterizing LaValley's headache symptoms as mild. *See* R. 19. The ALJ later explained that he limited LaValley to sedentary work with additional postural, manipulative, and environmental restrictions in part due to her migraine headaches. Dr. Sladky therefore did not cite any evidence about the intensity, severity, or frequency of LaValley's headaches that the ALJ did not already consider. Given its lack of support and inconsistency with other evidence in the record, it's likely the ALJ would have assigned little or no weight to Dr. Sladky's medical opinion. Thus, this new evidence cannot be material.

Similarly, I cannot find the subsequent allowance of benefits to be material because LaValley has failed to explain how "[t]his new decision calls into question the previous denial." ECF No. 25 at 23. The Seventh Circuit suggested in *Stephens v. Colvin* that a claimant could seek a sentence-six remand based on a subsequent finding of disability. *Stephens v. Colvin*, 671 F. App'x 390, 391 (7th Cir. 2016) (ultimately finding that the claimant had waived the argument and, in any event, failed to demonstrate good cause). But here LaValley has

10

failed to provide sufficient information about that finding to justify relief under sentence six. The only information she has offered is the notice of award, which simply says when her disability benefits kicked in (April 2020) and how much she is to receive each month ($522). We are left guessing as to the basis of that decision.

LaValley did also submit an affidavit from her lawyer asserting that he submitted the entire record from the denied claim with the new claim. But that sworn statement does not, as LaValley suggests, show that the new claim "was decided on the exact same facts." ECF No. 33 at 13. The affidavit does not assert that her new claim was based *only* on the evidence the ALJ considered here, rather than evidence of new or worsening impairments. Indeed, the affidavit indicates that LaValley also submitted the medical source statement of Dr. Sladky. So we know that her new application included at least some additional evidence that the ALJ here did not have. Without more information, I cannot find a reasonably probability that the ALJ would have reached a different conclusion. *See Schmidt*, 395 F.3d at 742 (noting that "new evidence is material only if it is relevant to the claimant's condition during the relevant time period encompassed by the disability application under review") (internal quotation marks omitted).

In sum, LaValley has failed to demonstrate that this case should be remanded to the Commissioner under sentence six of § 405(g).

## II. Sentence-Four Remand

Pursuant to sentence four of § 405(g), federal courts have the power to affirm, reverse, or modify the Commissioner's decision, with or without remanding the matter for a rehearing. A reviewing court will reverse a Commissioner's decision "only if the ALJ based the denial of benefits on incorrect legal standards or less than substantial evidence." *Martin v. Saul*, 950

11

Case 1:20-cv-01432-SCD   Filed 11/08/21   Page 11 of 15   Document 34

F.3d 369, 373 (7th Cir. 2020) (citing *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)). "Substantial evidence is not a demanding requirement. It means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Martin*, 950 F.3d at 373 (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)). In reviewing the record, this court "may not re-weigh the evidence or substitute its judgment for that of the ALJ." *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Rather, I must determine whether the ALJ built an "accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (citing *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001)).

Although LaValley contends that the ALJ committed several errors in his decision, I will address only one of those alleged errors because it is significant enough by itself to require remand. LaValley argues that the ALJ's RFC assessment does not account for all her mental-health limitations. In fashioning LaValley's mental RFC, the ALJ afforded significant weight to the opinions of the reviewing state-agency psychological consultants, Dr. Lefevre and Dr. Rivera. LaValley does not take issue with that finding. Rather, she maintains that the ALJ omitted key findings regarding LaValley's limitations with sustained concentration and persistence and social interaction without explaining their omission. I agree.

Start with sustained concentration and persistence. Dr. Lefevre and Dr. Rivera indicated on their mental RFC assessment forms that LaValley was "moderately limited" in her ability to carry out detailed instructions; maintain attention and concentration for extended periods; work in coordination with or in proximity to others without being distracted

12

by them; and work a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. R. 139–40, 161–62. They also explained these limitations in narrative form, opining that LaValley would have mild difficulty with simple instructions; would have moderate difficulty with more complex instructions; would have moderate difficulty with attention, concentration, persistence, or pace; would not require special supervision; was capable of making simple work-related decisions; and would have moderate difficulty showing up for work reliably and persisting due to a combination of mood, anxiety, and somatic complaints. *Id.*

Although the ALJ noted the psychological consultants' ratings and purported to give significant weight to their opinions, *see* R. 21, the ALJ did not discuss the consultants' narrative findings, and it's unclear from the decision how the ALJ's RFC assessment accommodates several of LaValley's apparent limitations. The ALJ found that LaValley was able to understand, remember, and carry out simple instructions and perform simple, routine tasks. Those findings place limitations on the complexity of work instructions and tasks LaValley could theoretically handle. But the ALJ never explained how those limitations account for LaValley's difficulties persisting, maintaining work pace, and completing a normal workday. *See Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015) (finding that an ALJ may rely on a reviewing consultant's narrative RFC only when that narrative "adequately encapsulates and translates those worksheet observations"). Nor did he explain why such limitations were not warranted.

Relying on *Pavlicek v. Saul*, the Commissioner argues that the ALJ did not need to account for any moderate limitations within the reviewing consultants' mental RFC

13

assessment forms. That argument, however, is contrary to *Yurt v. Colvin*, 758 F.3d 850 (7th Cir. 2014) and *Varga v. Colvin*, 794 F.3d 809 (7th Cir. 2015), two decisions that *Pavlicek* did not overrule. In *Pavlicek*, the Seventh Circuit applied *Varga* to find that the ALJ in that case reasonably relied on the state-agency consultants' narrative RFC because that narrative was consistent with their "moderate" checklist ratings. *Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021). In reaching that conclusion, the Seventh Circuit noted that social security regulations define a moderate limitation "to mean that functioning in that area is 'fair.'" *Id.* (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1).

Our case is not like *Pavlicek* because the ALJ here did not reasonably rely on the consultants' narrative RFC; rather, he failed to address several key limitations found in that narrative or explain why they were not included in the RFC. Moreover, the definition of moderate in the regulations pertains to the consultants' ratings of the paragraph B criteria. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(F)(2)(c). It does not apply to the degree of limitation in the actual RFC. Indeed, the Social Security Administration's own manual advises consultants not to "include . . . severity ratings or nonspecific qualifying terms (e.g., moderate, moderately severe) to describe limitations" because "[s]uch terms do not describe function and do not usefully convey the extent of capacity limitation." Programs Operations Manual System, DI 24510.065(B)(1)(c), https://secure.ssa.gov/poms.nsf/lnx/0424510065.

In sum, the ALJ did not build an accurate a logical bridge between the evidence and the mental RFC assessment.[5]

---

[5] The plaintiff also argues that the ALJ made a similar error with respect to LaValley's social interaction limitations. Dr. Lefevre and Dr. Rivera indicated that LaValley was "[m]oderately limited" in her ability to accept instructions and respond appropriately to criticism from supervisors and get along with co-workers or peers without distracting them or

14

# CONCLUSION

For all the foregoing reasons, I find that the ALJ committed reversible error in evaluating LaValley's mental abilities. Thus, I **REVERSE** the Commissioner's decision and **REMAND** this action to the Commissioner pursuant to sentence four of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), for further proceedings consistent with this decision. On remand, the Commissioner should also address LaValley's other claimed errors relating to her diabetic neuropathy and the medical opinion of her psychologist. The clerk of court shall enter judgment accordingly.

**SO ORDERED** this 88th day of November, 2021.

_Stephen C. Dries_
STEPHEN C. DRIES
United States Magistrate Judge

---

exhibiting behavioral extremes. R. 140–41, 162. The ALJ acknowledged that the psychological consultants found limitations interacting appropriately with co-workers and supervisors, *see* R. 21, and attempted to accommodate this problem by limiting LaValley to occasional interaction with co-workers, supervisors, and the public, R. 17. That restriction limits the amount of time LaValley could spend arounds others, which adequately mitigates any behavioral issues. *Jones v. Colvin,* No. 12 CV 50438, 2014 WL 467744, at *11 (N.D. Ill. Feb. 6, 2014) ("The ALJ accounted for this limitation as well as the Claimant's self-proclaimed 'inability to take directions from others' by limiting the Claimant to work that required only "occasional contact with co-workers and supervisors." Thus, the Court does not find the ALJ failed to consider the Claimant's limitations in anger management when she assessed his RFC.")